**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Larkins,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Carolyn Colvin, Commissioner of Social Security,<br><br>　　　　Defendant. | No. CV-12-01195-PHX-FJM<br><br>**ORDER** |

Plaintiff filed an application for supplemental security income on May 5, 2009. The claim was denied initially and upon reconsideration. Following a hearing on July 11, 2011, the administrative law judge ("ALJ") issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act, and denying benefits. The Appeals Council denied plaintiff's request for review on May 3, 2012, rendering the ALJ's decision final. Thereafter, plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). We have before us plaintiff's opening brief (doc. 10), defendant's answering brief (doc. 13), plaintiff's reply brief (doc. 14), and the administrative record (doc. 9).

**I**

A district court may set aside a denial of benefits "only if it is not supported by substantial evidence or if it is based on legal error." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "relevant evidence which, considering the record as

1 a whole, a reasonable person might accept as adequate to support a conclusion. Where the
2 evidence is susceptible to more than one rational interpretation, one of which supports the
3 ALJ's decision, the ALJ's conclusion must be upheld." Id. (citation omitted).

4       The ALJ followed the Social Security Act's five-step procedure to determine whether
5 plaintiff is disabled. See 20 C.F.R. § 416.920(a)(4). First, the ALJ determined that plaintiff
6 meets the status requirements of the Social Security Act and has not engaged in substantial
7 gainful activity since the date of alleged onset. Tr. 22. At step two, the ALJ found that
8 plaintiff suffered "severe" impairments including bipolar disorder, intermittent explosive
9 disorder, post-traumatic stress disorder ("PTSD"), personality disorder, depressive disorder,
10 and alcohol/cocain dependence (in remission). Id. At step three, the ALJ found plaintiff's
11 impairments do not meet the criteria listed in the regulations. Tr. 23. Next, the ALJ
12 determined that plaintiff has the residual functional capacity ("RFC") to perform a full range
13 of work at all exertional levels except that he can only perform simple, routine, repetitive
14 tasks at a job involving few work place changes. Tr. 24. The ALJ also found plaintiff is
15 limited to occupations that require no more than occasional interaction with supervisors, co-
16 workers and members of the public. Id. At step four, the ALJ concluded that plaintiff is
17 capable of performing his past relevant work as a general laborer. Tr. 26.

18       The ALJ consulted a vocational expert ("VE") at the hearing. The VE testified that
19 a person limited to plaintiff's RFC could perform plaintiff's past relevant work as a general
20 laborer. Tr. 26. However, the VE also testified that the job as a general laborer would only
21 be available in restricted numbers because of the limitation in the plaintiff's RFC requiring
22 only occasional contact with supervisors. Consequently, the ALJ made alternative findings
23 under step five of the sequential evaluation procedure. Based on the VE's testimony, the ALJ
24 concluded at step five that plaintiff is not disabled because his RFC does not preclude him
25 from performing other work existing in significant numbers in the national economy. Tr. 27.

26       Plaintiff challenges the ALJ's decision arguing that: (1) the ALJ erred by failing to
27 consider the limitations identified by his treating mental health nurse practitioner; (2) the
28 ALJ's step four and five determinations are legally flawed; (3) the ALJ erred by failing to

1  consider the nature and diagnostic criteria for plaintiff's multiple mental impairments; and
2  (4) the ALJ erred by rejecting the credibility of his symptom testimony. Plaintiff urges that
3  we remand for an award of disability benefits, or in the alternative, that we remand for
4  administrative proceedings and direct the ALJ to give greater weight to Ms. Brown, Ms.
5  Grigsby, and Drs. Fair and Rabara's opinions regarding plaintiff's limitations.

## II

Plaintiff argues that the ALJ erred by failing to consider, discuss or evaluate the limitations identified in his treating nurse practitioner's Mental Impairment Report (MIR). Plaintiff is correct that the ALJ's decision does not address the MIR. Notably, however, plaintiff did not submit the MIR to the ALJ until August 8, 2011, almost a month after the administrative hearing. Opening Brief at 7. To justify a remand in light of new evidence, plaintiff must show both that the new evidence is material to the disability determination and that he had good cause for having failed to present the new evidence to the ALJ earlier. Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001); see also 42 U.S.C. § 405(g) (2001). "To be material under section 405(g), the new evidence must bear directly and substantially on the matter in dispute." Id. (internal quotes and citation omitted). To show good cause, a plaintiff must demonstrate that the new evidence was unavailable earlier. Id. at 463.

Plaintiff contends that the MIR is significant because it states that he has multiple moderate mental limitations which undermine his ability to work. Because the extent of plaintiff's mental limitations is disputed, the MIR is material to the disability determination. However, plaintiff has failed to explain why he did not seek or could not have obtained the MIR before the ALJ hearing. Because plaintiff has not shown good cause for not having submitted the MRI earlier, the ALJ's failure to discuss it does not justify a remand.

## III

Next, plaintiff argues that the ALJ erred at step four by failing to identify the mental demands of plaintiff's past relevant work. At step four, the ALJ has a duty to make specific findings as to the claimant's RFC, the physical and mental demands of the past relevant work, and the relationship between the RFC and the past work. Pinto v. Massanari, 249 F.3d 840,

1  844-845 (9th Cir. 2001). Here, the ALJ found that plaintiff retained the RFC to perform
2  work at all exertional levels limited by simple, routine, repetitive tasks, few workplace
3  changes, and only occasional interaction with supervisors, coworkers, and the public. Tr. 24.
4  But the ALJ erred by failing to make the necessary findings regarding the mental and
5  physical demands of plaintiff's past work as a general laborer, and by failing to consider
6  whether the plaintiff's RFC allows him to meet the physical and mental demands of his past
7  relevant work. As discussed below, however, the ALJ properly made an alternative finding
8  of non-disability at step five of the sequential evaluation process. Therefore, the ALJ's error
9  at step four is harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th
10 Cir. 2006) (stating that an error is harmless when it is "inconsequential to the ultimate
11 nondisability determination").

12          Plaintiff argues that the ALJ's step five finding is flawed for two reasons. First,
13 plaintiff contends that there is a conflict between the VE's testimony and the Dictionary of
14 Occupational Titles ("DICOT") that the ALJ failed to resolve. We disagree. Plaintiff's
15 assertion that the VE erred when she stated that her testimony was consistent with the
16 DICOT is unpersuasive. But even assuming that there was a conflict, an ALJ may rely on
17 VE testimony which contradicts the DICOT as long as the record "contains persuasive
18 evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).
19 Here, it was appropriate for the ALJ to rely on the VE to identify jobs that someone with the
20 plaintiff's education, past work experience, and RFC limitations could perform because the
21 VE, unlike the DICOT, considers non-exertional limitations. Second, plaintiff argues that
22 the ALJ erroneously omitted his moderate limitation in concentration, persistence, and pace
23 ("CPP") in the hypothetical posed to the VE. An ALJ may translate moderate limitations in
24 CPP into the concrete restriction that plaintiff be limited to "simple, routine, repetitive [tasks]
25 . . . requiring no interaction with the public," where those restrictions were identified in the
26 medical testimony. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). The
27 ALJ's hypothetical to the VE required her to assume plaintiff "would be limited to
28 occupations requiring no more than simple, routine, repetitive tasks . . . which require no

more than occasional interaction with supervisors, coworkers, and the public." Tr. 69-70. These concrete restrictions are consistent with Drs. Rabara and Fair's medical opinions regarding plaintiff's CPP. See Tr. 307, 312. Therefore, the ALJ's hypothetical to the VE was proper, and the ALJ's step five determination is not legally flawed.

## IV

Next, plaintiff argues that the ALJ erred by failing to consider the nature and diagnostic criteria for plaintiff's multiple mental impairments and his lower Global Assessment of Functioning ("GAF") scores. Plaintiff is wrong. The ALJ's RFC assessment considered both the nature of plaintiff's mental impairments and his GAF scores. To determine the nature of plaintiff's mental impairments, the ALJ evaluated the medical opinions of Drs. Rabara and Fair, and noted that plaintiff has "difficulty with focus on detailed work tasks over an extended period and [needs] a work setting with limited contact with others." Tr. 26. The ALJ also specifically stated that in June 2010 plaintiffs GAF score was estimated at 55, rose to 65 by October 2010 after counseling and medication, and finally dropped to 50 by January 2011. Tr. 25. A GAF score of 50 indicates "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM–IV–TR) (4th ed. 2000). The ALJ's RFC, which included a limitation requiring only "occasional interaction with supervisors, coworkers, and the public," is consistent with the lowest GAF score of 50. Accordingly, the ALJ did not fail to consider the nature of plaintiff's mental impairments and GAF scores.

## V

Finally, plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject the credibility of his symptom testimony. Absent affirmative evidence of malingering, an ALJ must give clear and convincing reasons in order to reject the plaintiff's symptom testimony. Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012) (citations omitted). However, an ALJ is not "required to believe every allegation of disabling pain."

- 5 -

1 Id. When weighing a plaintiff's credibility, "the ALJ may consider his reputation for 2 truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, 3 his daily activities, his work record, and testimony from physicians and third parties 4 concerning the nature, severity, and effect of the symptoms of which he complains." Light 5 v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted). In addition, the 6 ALJ may consider the dosage and effectiveness of any treatment or pain medication for relief 7 of pain. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

8 Plaintiff argues that the ALJ erroneously asserted that plaintiff's allegation of severe 9 headaches was not supported by medical evidence. Tr. 25. Even if the ALJ's reliance on 10 that ground was erroneous, any error is harmless because, as discussed below, the ALJ relied 11 on other proper bases for discounting plaintiff's testimony. Batson v. Commissioner of 12 Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even 13 if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's 14 testimony, the error was harmless where other reasons supported the ALJ's decision). First, 15 the ALJ identified several inconsistencies between plaintiff's testimony and the record. 16 Specifically, the ALJ noted that plaintiff testified that he was taking his medications until 17 approximately April 2011, three months before the hearing, but that the record shows that 18 he stopped his medication as far back as March 2010. Tr. 25. The ALJ also observed that 19 plaintiff testified that the mental health problems that allegedly led to his inability to work 20 began after he was assaulted in 2004, yet there was virtually no evidence he had been 21 working in the years immediately before his assault. Id. Second, the ALJ found that plaintiff 22 has only mild limitations in his activities of daily living, which is inconsistent with the claim 23 that he is completely disabled. Third, the ALJ noted that the unexplained fluctuations in the 24 plaintiff's mental condition during the adjudicatory period did not help plaintiff's credibility. 25 Id. Finally, the ALJ expressly noted that plaintiff's mental health treatment helped control 26 his symptoms. Id.

27 Where, as here, the ALJ has made specific findings justifying a decision to disbelieve
28

plaintiff's symptom allegations, and those findings are supported by substantial evidence in the record, "we may not engage in second-guessing." Thomas, 278 F.3d at 958-59. Therefore, we conclude the ALJ gave clear and convincing reasons to support his determination that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the extent alleged.

## VI

Based on the foregoing, we conclude that the ALJ's conclusion that plaintiff is not disabled is supported by substantial evidence in the record. Therefore, **IT IS ORDERED AFFIRMING** the decision of the Commissioner denying disability benefits. The clerk shall enter final judgment.

DATED this 15th day of May, 2013.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge